IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MONTE DELANO CARTER, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. JRR-24-2046 |
| ROBERT DEAN, WARDEN, *et al*., | * | |
| Respondents. | * | |

***

**MEMORANDUM OPINION**

Petitioner Monte Delano Carter, a state prisoner confined at the Jessup Correctional Institution in Jessup, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he collaterally attacks his 2016 conviction for first-degree murder. ECF 1. Respondents have filed an Answer in which they argue that the Petition should be dismissed as time-barred. ECF 8. Pursuant to *Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002), Carter was afforded an opportunity to explain why the Petition should not be dismissed as time-barred (ECF 9), and he submitted a Reply to the Answer. ECF 10. Upon review of the submitted materials, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DISMISSED as time-barred and a certificate of appealability shall not issue.

## I. BACKGROUND

### A. Factual Background

Carter plead guilty in the Circuit Court for Baltimore City to first-degree murder. ECF 8-1.[2] On

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

February 8, 2013, a Baltimore City Police Officer filed a Statement of Charges in the District Court of Maryland charging Carter with various offenses arising out of an apparent arson. ECF 8-1 at 87. The Statement of Probable Cause filed in support of the charges asserted the following:

> On Friday[,] February 8, 2013[,] officers from the northwest district responded to 5719 Highgate Dr. for the report of a dwelling fire. Upon [the] officers['] arrivals they were met by members of the Baltimore City Fire Department who had contained the fire inside the dwelling. Shortly thereafter members of the fire department discovered the body of the victim, identified as Jennifer Conyers, B/F/32 04/01/80, lying face down in the basement. The victim was found to be bound with electrical cords and speaker wire around her hands and upper body. The victim was suffering from apparent head trauma. The victim was pronounced dead . . . at 2:56 pm. The scene was secured and your writer was notified.
>
> [Officer Robert L. Dohony] responded to the scene arriving at 4:00 pm. During the course of the initial investigation[,] it was discovered that the victim's 2004 ford mustang, MD tag A185567, had been taken from the scene. Neighbors on the block recall seeing the vehicle in the rear alley just prior to the fire starting. After noticing the fire, the vehicle was gone. A city wide broadcast was done in search of the vehicle.
>
> The scene was processed[,] and a potential crime scene was discovered in the first floor front bedroom. This consisted of a large area of blood on the floor near the bed. A computer was discovered in the bedroom that was covered in blood. This computer appeared to have been broken during a struggle. It appeared the victim was assaulted in the bedroom, tied up with wires and electrical cords from the computer, and dragged into the basement.
>
> The victim's body was examined at the scene by investigators from the [Office of the Chief Medical Examiner]. During the initial examination[,] the victim was found to be suffering from severe trauma to the rear of her head. . . . Dr. Alexander [later] conducted [an] autopsy and ruled the victim's death a homicide.
>
> At 8:40 am on Saturday[,] February 9, 2013[,] members of the western district pulled over the victim's car at the corner of Pitcher St. and Freemont Ave. The def[endant], identified as Monte Carter, was found to be driving the car and was taken into custody and transported to the homicide office. The vehicle was towed to the headquarters building for processing.
>
> Upon arrival to the homicide office[,] it was discovered that [Carter] had visible blood on his jeans and shoes. This was documented by photographs. At 11:25 am [Carter] was read his Miranda rights, waived same, and supplied . . . a taped statement.

> During his statement he advised that he and another person known as "Kenny" were using cocaine and heroin together since about Wednesday night. During that time [Carter] advised they were driving around in the victim's car and using her ATM card to buy cigarettes and other items. They would sell these items to obtain money to purchase more drugs. [Carter] advised that "Kenny," who he could supply no other information, dropped him off yesterday afternoon in the area of Garrison Blvd. and left for a short time. [Carter] advised that he met up with "Kenny" about 5:00 pm. They continued to use her ATM card and use drugs until later in the evening. At some point [Carter] abandon[ed] "Kenny" at an unknown location.
>
> [Carter] advised that he had met the victim several months ago through an on-line dating website. He also advised that they had sex several times in the past. He advised he had not seen the victim in several weeks. When [Carter] was asked about the blood on his pants and shoes he could supply no logical explanation. He advised that he had cut his hand when the handcuffs were put on him. [Carter] did suffer a superficial wound to the top of his left hand. This wound was not bleeding in a way that would leave that much blood on his pants and shoes. At that point in the statement [Carter] asked for a lawyer and the statement ended. . . .
>
> All events occurred in the city of Baltimore, State of Maryland.

ECF 8-1 at 91-94 (paragraph breaks added) (all caps omitted).

### B. <u>Procedural Background</u>

Carter was indicted on March 22, 2013. ECF 8-1 at 4, 14, 23. On March 29, 2016, Carter pleaded guilty in the Circuit Court for Baltimore City to first-degree felony murder and first-degree arson. *See Carter v. Maryland*, No. 1037, Sept. Term 2020 (Md. App. August 2, 2021); ECF 8-1 at 42, 55, 133. He did not file an application for leave to appeal his guilty plea or sentence. ECF 8-1 at 55, 134, n. 3.

Carter's Motion for Reconsideration/Modification of Sentence, filed pursuant to MD. RULE 4-345(e), on June 20, 2016, was denied on August 3, 2016. ECF 8-1 at 55, 95.

On January 10, 2018, Carter initiated state postconviction proceedings under Maryland's Uniform Postconviction Procedure Act ("UPPA"). ECF 8-1 at 55. Counsel entered their appearance on Carter's behalf on April 23, 2018. *Id.* at 57. Carter withdrew the petition on November 1, 2018. *Id.* at 55.

Carter filed, pro se, a Motion to Correct Illegal Sentence, pursuant to MD. RULE 4-345(e) on January 14, 2020, asserting that the circuit court inappropriately inserted itself into the plea negotiations. ECF 8-1 at 58-59, 133-34. The Motion was denied on October 2, 2020. *Id*. at 59. Carter filed an appeal. *Id*. at 37, 97. On August 2, 2021, the Appealle Court of Marland affirmed the judgment of the circuit court. *Id*. at 132-35. The court's mandate issued on September 2, 2021. *Id*. at 136. Carter did not seek further review.

On July 12, 2024, this Court docketed Carter's federal habeas petition (the "Petition"). ECF 1. The Petition is postmarked July 10, 2024 (ECF 1-2 at 1), and Carter certified that he mailed the petition on July 9, 2024. ECF 1-1 at 6.

In the Petition, Carter asserts one ground for relief: "the presentment or indictment of a Grand Jury cannot be changed without resubmission to the Grand Jury to whom submitted it." ECF 1 at 5. In support of his claim, Carter explains that he was indicted for premeditated murder but pleaded guilty to felony murder. ECF 1-1 at 1, 2. He asserts that because he was indicted for "premeditated murder" rather than felony murder the State was required to resubmit the case to the Grand Jury before he could plead guilty to felony murder and—because that was not done—his indictment was void. ECF 1-1 at 1, 2-3.

On July 18, 2024, the Court directed Respondents to answer the Petition. ECF 4. On September 24, 2024, Respondents filed a Limited Answer to the Petition arguing that the matter is time-barred. ECF 8. On September 25, 2024, the Court issued an Order which, among other things, provided Carter 30 days to respond to the Limited Answer and offer additional information concerning the timeliness of his Petition. ECF 9.[3]

[3] The Fourth Circuit has held that, before dismissing a *pro se* petition for writ of habeas corpus, "a district court should furnish notice that simply warns the *pro se* petitioner that his § 2254 action will be dismissed as untimely unless the petitioner can demonstrate that the petition was filed within the proper time period." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002).

On October 28, 2024, Carter filed a Reply providing additional information he wished the Court to consider. ECF 10. He asserts that his right to due process was violated because the State did not prove the element of premeditation when the prosecutor "switched to a 'felony' murder without returning the indictment to the grand jury first." ECF 10 at 4. Carter also asks that he be granted habeas relief by "default" because the State did not address the merits of his Petition. *Id*. at 7.

Next Carter asserts the "actual innocence and miscarriage of justice, exceptions." ECF 10 at 8. In support of this argument, Carter states that for years he has sought to answer the question "What is Maryland's Threshold for a positive DNA Match[?]" *Id*. at 9. Carter explains that he asked this question of each attorney assigned to represent him but was provided no answer. *Id*. He states that he was advised by his attorney on October 2, 2015, that the State could not use the DNA acquired in his case because the analyst had moved out of the country. *Id.* Later, Carter learned that the "DNA was now a 7 point match; however no indication of Maryland's threshold was listed or spoke of in court." *Id*. Carter explains that his defense attorney could not answer the question regarding DNA and did not seek to find the answer to the question before a hearing with the Maryland DNA supervisor on March 29, 2013. *Id*. at 10. Carter explains that the answer only became clear to him when the State answered the instant Petition, which provided documentation that the DNA in his case was reworked and "brought Mr. Carter's DNA down to a 7 point match, below Maryland's threshold for positive identification match." *Id*. Carter explains that this information was not given during the disposition of his case and asserts that the failure to disclose this information was a *Brady* violation. *Id*. Carter further explains that under *Schlup*, this evidence is new reliable exculpatory scientific evidence that was not presented at trial, demonstrating his actual innocence. *Id*. at 10-11. Carter also claims that his counsel was

ineffective in not knowing the threshold for positive DNA matches. *Id*. at 11.

Additionally, Carter offers that he entered his plea under duress because counsel and the court both stated that they did not understand DNA evidence and would rely on the analyst; and because his case had been postponed a number of times so he was held in pretrial detention for three years. ECF 10 at 13-14. He further explains that he was assaulted by staff while a pretrial detainee. *Id*. at 14.

Lastly, Carter points out errors in the lead detective's investigation and reporting of the case as well as errors in the prosecutor's presentation of the case to the grand jury. ECF 10 at 14-17.

## II. DISCUSSION

### A. <u>Standard of Review</u>

A one-year limitation period applies to petitions for writ of habeas corpus filed under 28 U.S.C. § 2254. The limitation period is set forth in 28 U.S.C. § 2244, which provides that the one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

"The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Further, the Fourth Circuit has held that a motion for modification of sentence filed under Maryland Rule 4-345 tolls the one-year limitations period under 28 U.S.C. § 2244(d)(2) because "a Maryland Rule 4-345 motion to reduce sentence is not part of the direct review process and undoubtedly calls for review of the sentence." *Mitchell v. Green*, 922 F.3d 187, 195 (4th Cir. 2019) (quoting *Wall v. Kholi*, 562 U.S. 545, 555 (2011)) (internal quotation marks omitted).

"[T]he one-year limitation period is also subject to equitable tolling in 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). To be entitled to equitable tolling under this theory, a petitioner must establish that either some wrongful conduct by respondents contributed to his delay in filing his petition or that "extraordinary circumstances" beyond his control "made it impossible to file the claims on time." *See Harris*, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.*

**B. <u>Analysis</u>**

Carter's conviction became final for purposes of calculating the one-year limitation period under § 2244(d)(1) on April 28, 2016, 30 days after he was sentenced, when the time for filing an application for leave to appeal expired. *See* MD. RULE 8-204(b)(2)(A) (providing application for leave to appeal an unconditional guilty plea must be filed within 30 days); MD. CODE ANN., CTS

& Jud. Proc. § 12-302(e)(2) (providing defendants entering unconditional guilty pleas do not have automatic right to appeal and must first seek leave to appeal). Carter did not file an application for leave to appeal, and his judgment of conviction became final when the time for doing so expired.

On June 20, 2016, Carter filed a Motion for Modification of Sentence, which was denied on August 3, 2016. He is entitled to statutory tolling of the one-year federal habeas filing deadline during the 44-day period of time that this motion was pending. *See Carey v. Saffold*, 536 U.S. 214, 219–20 (2002) ("[A]n application is pending as long as the ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of that process."). However, Carter's state proceedings then fell dormant for over a year, between resolution of his Motion for Modification on August 3, 2016, and the filing of his UPPA petition on January 10, 2018. By the time Carter filed his UPPA petition, the one-year statute of limitations had expired. Carter's postconviction petition did not toll limitations because it was filed following expiration of the one-year limitations period. State proceedings filed after the federal habeas deadline has passed do not revive the limitations period. *See Gray v. Waters*, 26 F.Supp.2d 771, 772 (D.Md. 1998) (holding the limitations period "does not begin to run anew for a year following denial of state post-conviction remedies"); *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating a state court filing after the federal deadline expired does not revive the federal limitations period); *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000) (explaining that a state postconviction proceeding commenced after the one-year limitation period has already expired does not "reset" the start of the limitation period).

After the conclusion of those proceedings, Carter's case then lay dormant from the withdrawal of his UPPA petition on November 1, 2018, until he filed a Motion to Correct Illegal

Sentence on January 14, 2020, and was then dormant again from the conclusion of litigation regarding his Motion to Correct Illegal Sentence on September 2, 2021, until this Court docketed his federal habeas petition on July 16, 2024. ECF 1.

Carter's Petition does not rely on a constitutional right recognized by the Supreme Court and made retroactively applicable, nor does Carter allege he was prevented from filing his Petition through state action or that the factual predicate for any of his claims was not discovered until one year prior to the filing of his Petition.[4] 28 U.S.C. § 2244(d)(1). Further, Carter does not present grounds or evidence of entitlement to equitable tolling of the limitations period. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

Lastly, while a claim of actual innocence may allow this Court to consider an untimely filed § 2254 petition, Carter has not provided enough factual information to raise a claim of actual innocence.[5] *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding

---

[4] While Carter claims that he did not realize the significance of the "reworked" DNA analysis until he received the response to the instant Petition, that claim is belied by the record. First, it is clear he was aware that the DNA evidence had been retested and had been provided the results of that analysis as early as 2013. *See* ECF 10 at 10. Further, in his pro se Appellant Brief, filed in 2021, Carter stated: "Cell Mart Supervisor Kelly Byrd….[]reworked the numbers that brought Mr. Carter's DNA down to a 7 point match; below Maryland's threshold for positive identification matches." ECF 8-1 at 106.

[5] Examples of new evidence that have been found to satisfy the actual innocence gateway standard are: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," as well as "substantial evidence pointing to a different suspect," *House*, 547 U.S. at 540-41 (2006); (2) "sworn statements of several eyewitnesses that [the petitioner inmate] was not involved in the crime" and affidavits "that cast doubt on whether [the petitioner inmate] could have participated" in the offense, *Schlup*, 513 U.S. at 331; (3) a third party's consistent and repeated statement that the third party committed the offense, *Jones v. McKee*, No. 08 CV 4429, 2010 WL 3522947, at *9-10 (N.D. Ill. Sept. 2, 2010); *Carringer v. Stewart*, 132 F.3d 463, 478-79 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he committed the offense and separately boasted to other individuals that he set-up the petitioner); and (4) documentary evidence indicating that the petitioner was in another country on the day of the offense and affidavits of five individuals stating that petitioner was outside the country at the precise time of the offense, *see Garcia v. Portuondo*, 334 F. Supp. 2d 446, 452-56 (S.D.N.Y. 2004). *See generally Schlup*, 513 U.S. at 324 (providing that examples of sufficient new reliable evidence for a gateway claim include "exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence").

the existence of a procedural bar to relief."). Carter's time-barred petition may be considered by this Court if "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 395, quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995). In the context of an untimely petition, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Perkins*, 569 at 399.

Here, Carter generally proclaims his innocence and points to what he refers to as a "reworking" or retesting of DNA evidence on an unspecified date which resulted in DNA evidence being an insufficient match. He does not explain when the DNA test was reworked but it is apparent that Carter was aware of this evidence during his pretrial proceedings; therefore, the evidence is not new. Nor does Carter demonstrate that the inconclusive DNA results make it more likely than not that no reasonable juror would have convicted him based on the other evidence in his case, which included his prior sexual relationship with the victim and his arrest while driving her vehicle, in possession of her credit cards, and covered in blood.

Importantly, the reworking or retesting of DNA evidence, with an inconclusive result, does not rise to the demanding standard articulated in *Schlup*. Further, Carter does not offer sufficient explanation for the delay in presenting his claim. While he references his pro se status and misstatements of the prosecutor and detective involved in his case, he does not put any of these details into context as to when he discovered these issues and the like; and, critically, he fails to provide specific evidence of his innocence. In short, Carter's case does not present one of those "rare" instances in which a petitioner can successfully invoke the *Schlup* actual-innocence gateway. Consequently, the Petition must be denied as time-barred.

## III. CERTIFICATE OF APPEALABILITY

When a district court dismisses a habeas petition solely on procedural grounds, a

certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This Court concludes that Carter has not made such a showing and declines to issue a certificate of appealability. Carter may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Carter's Petition for Writ of Habeas Corpus (ECF 1) and decline to issue a certificate of appealability. A separate Order follows.

/S/

_______________________________

September 16, 2026

Julie R. Rubin
United States District Judge